**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

| | |
|---|---|
| ALBERT ARTHUR ROMERO, JR., | Case No. CV 17-08459-AS |
| Plaintiff, | **MEMORANDUM OPINION AND** |
| v. | **ORDER OF REMAND** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

**PROCEEDINGS**

On November 20, 2017, Plaintiff filed a Complaint seeking review of the denial of his application for Disability Insurance Benefits. (Docket Entry No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 9-10, 19). On April 23, 2018, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 13-14). On May 29, 2018, Plaintiff filed a Memorandum in Support of Plaintiff's Complaint

("Plaintiff's Memorandum"). (Docket Entry No. 15). On July 3, 2018, Defendant filed a Memorandum in Support of Answer ("Defendant's Answer"). (Docket Entry No. 16). On July 13, 2018, Plaintiff filed a Reply to Defendant's Answer ("Plaintiff's Reply"). (Docket Entry No. 17).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15; Case Management Order, filed December 1, 2017 (Docket Entry No. 7).

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On April 1, 2014, Plaintiff, formerly employed as a tractor and roller operator for a construction company (see AR 42-45, 189), filed an application for Disability Insurance Benefits, alleging an inability to work because of a disabling condition since April 15, 2013. (AR 168-69). On or about April 5, 2016, Plaintiff amended the application to request a closed period of benefits from April 15, 2013 to September 1, 2015. (AR 223-28). On or about April 8, 2016, Plaintiff amended his alleged disability onset date from April 15, 2013 to May 19, 2013. (AR 233).

On April 7, 2016, the Administrative Law Judge ("the ALJ"), Richard T. Breen, heard testimony from Plaintiff (who was represented by counsel) and vocational expert Gregory Jones. (See AR 36-82). On May

25, 2016, the ALJ issued a decision denying Plaintiff's application. (See AR 20-28). After determining that Plaintiff had severe impairments -- "degenerative disc disease; fracture/sprain of left ankle; and status post left knee arthroscopic surgery" (AR 22) -- but did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments (AR 23), the ALJ found that from May 19, 2013 through September 1, 2015 Plaintiff had the residual functional capacity ("RFC")[1] to perform sedentary work[2] with the following limitations: no work involving use of foot controls; no more than occasional climbing ramps and stairs; no climbing ladders, ropes or scaffolds; no more than occasional balancing, stooping, kneeling, crouching or crawling; no work at unprotected heights, near moving mechanical parts, or involving expsosure to vibrations; and the use of a cane for walking distances longer than two blocks. (AR 23-27). The ALJ then determined that Plaintiff was not able to perform any past relevant work (AR 27), but that Plaintiff could perform jobs existing in significant numbers in the national economy and was therefore not disabled within the meaning of the Social Security Act. (AR 27-28).

---

[1] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

The Appeals Council denied Plaintiff's request for review of the ALJ's decision on September 21, 2017. (See AR 1-5). Plaintiff now seeks judicial review of the ALJ's decision which stands as the final decision of the Commissioner. See 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Administration's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that the ALJ erred in (1) finding that Plaintiff's impairments did not meet Listings 1.02, 1.03, and 1.04; (2) rejecting the opinions of Plaintiff's treating physicians; (3) finding Plaintiff's testimony not credible; and (4) failing to present an

4

appropriate hypothetical question to the vocational expert. (See Plaintiff's Memorandum at 4-16; Plaintiff's Reply at 2-6).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's third claim of error warrants a remand for further consideration. Since the Court is remanding the matter based on Plaintiff's third claim of error, the Court will not address Plaintiff's first, second and fourth claims.

**A. The ALJ Did Not Properly Reject Plaintiff's Symptom Testimony**

Plaintiff asserts that the ALJ did not provide legally and factually sufficient reasons for finding that Plaintiff's testimony about his symptoms and limitations was not credible. (See Plaintiff's Memorandum at 11-15; Plaintiff's Reply at 5). Defendant asserts that the ALJ provided proper reasons for finding Plaintiff not fully credible. (See Defendant's Answer at 12-17).

1. <u>Legal Standard</u>

Where, as here, the ALJ finds that a claimant suffers from a medically determinable physical or mental impairment that could reasonably be expected to produce his alleged symptoms, the ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to

perform work-related activities for an adult . . . ." Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, *3.[3]

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the subjective symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her pain and symptoms only by articulating specific, clear and convincing reasons for doing so. Brown-Hunter v. Colvin, 798 F.3d 749, 755 (9th Cir. 2015)(citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)); see also Smolen, supra; Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Because the ALJ does not cite to any evidence in the record of malingering, the "clear and convincing" standard stated above applies.

Generalized, conclusory findings do not suffice. See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004)(the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on permissible

---

[3] SSR 16-3p, which superseded SSR 96-7p, became effective on March 28, 2016 and is applicable to this case because it was in effect at the time of the Appeal Council's September 21, 2017 denial of Plaintiff's request for review. The regulation on evaluating a claimant's symptoms, including pain, has not changed. See 20 C.F.R. § 404.1529.

6

grounds and did not arbitrarily discredit the claimant's testimony") (citation and internal quotation marks omitted); <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1208 (9th Cir. 2001)(the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); <u>Smolen</u>, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").

2. <u>The ALJ's Credibility Finding</u>

Plaintiff made the following statements in a "Exertion Questionnaire Since Your Disability Began" dated April 21, 2014:

> He lives with family in a house. (<u>See</u> AR 198).

> He is not able to carry out his normal workday because of left knee pain (a doctor has requested total knee replacement in 2014; he is waiting on the insurance company's approval), severe lower back pain (he is waiting on the insurance company's approval for surgery), and left ankle pain (he is having left ankle surgery in June 2014). His left knee and lower back pain limit him to walking for ten minutes, and then he has to take a break. He can lift at most two shopping bags from the market to the car and from the car to the house (two times a week). He does not climb stairs. (<u>See</u> AR 198-200).

> On an average day he does not do much because of pain in his knee, lower back, left leg, ankle and neck (moderate). He does his own grocery shopping (once or twice a week). He drives an automatic car for 45 minutes. He does not clean or do chores in his house or living area or do yard work (he cannot climb a ladder to wash windows or clean rain gutters). Prior to beoming disabled, he was able to do yard work. (<u>See</u> AR 198-200).

> He is required to take a rest when his pain becomes too severe to walk or sit. He uses a knee compression brace daily and a cane almost daily. He takes Norco (3 times a day), Somas (350 mg, 1 time at night), Ambien (10 mg, 1 time at night), and Nexium (40 mg, 1 time a day). (<u>See</u> AR 200).

Plaintiff gave the following testimony at the administrative hearing (see AR 38-69):

He is 5 feet 6 1/2 inches tall and weighs 180 pounds. He lives with his wife and his daughters who are 28 and 17 years-old. He received a GED. Prior to stopping work in 2013, he was a tractor and roller operator for Los Angeles Unified School District ("LAUSD"), using mechnical tools and hand tools to repair, remove and replace asphalt at schools. He stopped working because he had some "pay to work issues" with Human Resources and because he was not allowed to work because of the medication (Norco) he was taking for his knee and back pain (he was DOT tested as an operator). In September 2015, following a portion of time receiving workers' compensation, he returned to work at LAUSD as a senior tractor roller operator, which requires him to supervise crews and work in the office but is less physical than his former job. (See AR 38-40, 42-48, 60).

When he stopped working (after an earlier unsuccessful left knee surgery, several injections in his left knee, an earlier back injury for which he received several epidurals, a second unsuccessful left knee surgery [a partial replacement], and additional back epidurals), he was limping and suffered from constant knee pain and throbbing back pain (it "would come and go") shooting into his left buttocks and down his leg, causing numbness in his foot. (See AR 48-50, 61-62).

On May 19, 2013 (approximately one month after his alleged disability onset date), he was in a motorcycle accident (the accident was not his fault). He was feeling good that day (he had "been in a funk"), and he decided to ride for the first time since he stopped working. As a result of the accident, he suffered a left ankle fracture (he wore a cast for 8 weeks) and tore ligaments or cartilage in his right hand (he wore a cast for 6 weeks and then in June 2013 he needed to wear a wrist splint as needed; his hand has healed). (See AR 51-54, 57-59).

Some time prior to the motorcycle accident, a doctor requested a spinal cord stimulator for him, because he was scared and skeptical of surgery (workers' compensation had trouble approving the stimulator). At the time, although he was taking about four Norco pills a day, he was still having significant pain. (See AR 63-64).

After the motorcyle accident through 2014, he just went to doctor appointments and physical therapy (initially 5 days a week). He drove himself to the doctors. Sometimes he could walk for a few minutes up to 10 minutes, but at different times his back was inflamed, he had a cast on his left foot, or he was on crutches. He continued to have significant pain in his left knee and back. He was not able

to do any house work or shopping. He slept 1 to 2 hours a night because of thoughts about the accident, pain, and depression. The physical therapy was helpful for his hand but not his left ankle (he experienced pain and discomfort). (See AR 56-58, 62-63, 66, 68).

On June 3, 2014, following an MRI, he had left ankle surgery. That surgery did not go well and caused him to be sore. Popping the ankle made him feel a little better. The doctor contemplated a left ankle replacement surgery. (See AR 58, 62, 64-65).

In September 2014 (at which time he had significant pain in his lumbar spine, had some atrophy in his left quadricep, and used a cane "[p]retty much all of the time"), he had a third left knee surgery (a total knee replacement). He no longer limps but still has issues because his left knee is loose; another surgery has been recommended but he does not want it. (See AR 41, 50-51, 58, 65-67).

He underwent lumbar surgery a few months later. After 6 to 8 weeks of physical therapy, he felt well enough to return to work. (See AR 67-68).

After briefly summarizing Plaintiff's testimony (see AR 23-24), and after noting the limited value of the conclusions, observations and findings made in workers' compensation reports (see AR 24), the ALJ stated that "[o]verall, the medical evidence partially supports the claimant's allegations (AR 24), and then proceeded to discuss the medical records (see AR 24-25). After discussing the applicable standards for evaluating a claimant's testimony concerning symptoms and limitations (see AR 25-26), the ALJ made the following findings: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely supported for the reasons explained in this decision." (AR 26).

9

After stating that "[o]verall, the medical evidence during the period in question (May 19, 2013 through September 1, 2015) shows that although the claimant clearly had significant debilitating orthopedic conditions, he was not precluded from all work related activities," id., the ALJ stated, "Although the claimant testified he stopped working because he found out he was not allowed to be on medication while at work, a report dated January 15, 2015 from qualified medical evaluator Andrew Rah, M.D. indicated the claimant was actually removed from his position for failing a drug test, when he tested positive for alochol while on the job. (Exhibit 17F, p. 42). Id. The ALJ then discussed the opinions and the weight given to the opinions of two of Plaintiff's treating physicians, the consultative examiner, and the State Agency medical consulants. (See AR 26-27). The ALJ finally stated: "It is also noted that according to the Exertional Activities Questionnaire completed by the claimant in April 2014, he was still able to drive a car and go shopping despite his low back pain and left ankle/left knee conditions (Exhibit 3E). The claimant also testified that he was able to drive to his doctor's appointments, and attended physical therapy." (AR 27).

3. The ALJ's Assessment of Subjective Symptom Testimony

As set forth below, the ALJ failed to provide legally sufficient reasons for discrediting Plaintiff's testimony about the intensity, persistence and limiting effects of his pain and symptoms.[4]

---

[4] The Court will not consider reasons for discounting Plaintiff's subjective symptom testimony that were not given by the ALJ in the decision (see Defendant's Answer at 14). See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)("We are constrained to
(continued...)

First, the ALJ failed to "specifically identify 'what testimony is not credible and what evidence undermines [Plaintiff's] complaints.'" Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)); see also Smolen, 80 F.3d at 1284 ("The ALJ must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion").

Second, to the extent that the ALJ partially discredited Plaintiff's testimony based on an inconsistency between Plaintiff's testimony and a notation in the medical record about Plaintiff's reason for leaving work in April 2013, see Light v. Social Security Admin., supra ("In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work history, and testimony from physicians and third parties concerning the nature, severity, and effect on the symptoms of which he complains."); 20 C.F.R. § 1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . ."); see also Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001)(finding that the ALJ properly disregarded the claimant's testimony, in part, because the claimant "stated at the administrative hearing and to at least one of his doctors that he left his job because

---

⁴ (...continued)
review the reasons the ALJ asserts."; citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947), Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001)); and Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014)("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

he was laid off, rather than because he was injured"), such reason was not clear and convincing.  Contrary to the ALJ's assertion, Plaintiff did not testify that he left work solely because he was not allowed to be on pain medication while at work.  Rather, Plaintiff testified that he left work because of an undisclosed non-health-related issues with Human Resources as well as because of the medication (Norco) problem. (See AR 46-47).  The notation by the consulative examiner that Plaintiff was removed from his LAUSD position for failing a drug (alcohol) test (see AR 724) may or may not have been inconsistent with Plaintiff's testimony, and the ALJ did not ask Plaintiff at the hearing about that notation.  Moreover, any inconsistencies with respect to Plaintiff's reason for leaving work in April 2013 had no bearing on the credibility of Plaintiff's testimony concerning his inability to work on or after May 19, 2013, the date of Plaintiff's motorcyle accident.

Third, to the extent that the ALJ partially discounted Plaintiff's testimony about his symptoms and functional limitations based on his ability to perform certain daily activities, such as driving, driving a car to doctors' appointments, attending physical therapy and shopping, such reason was not clear and convincing.  See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)("[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability.  One does not need to be 'utterly incapacitated' in order to be disabled."); Reddick, supra ("Only if the level of activity were inconsistent with the Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.").  While a plaintiff's ability to spend a "*substantial part*" of his day engaged in pursuits involving the

12

performance of physical functions that are transferable to a work setting may be sufficient to discredit him, here, there is no evidence that Plaintiff was spending a substantial part of his day engaged in these activities or that the physical demands of such tasks as driving, driving a car to doctors' appointments, attending physical therapy, and shopping were transferable to a work setting. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). Indeed, at the hearing, the ALJ did not ask Plaintiff about the amount of time it took him to drive to doctors' appointments, to attend physical therapy and to shop or how often he did these activities. Thus, Plaintiff's admitted daily activities do not constitute a legally sufficient reason to reject Plaintiff's subjective symptom testimony.

It is not clear whether the ALJ considered Plaintiff's testimony about his limited abilities to perform such daily activities (see AR 199 [Plaintiff testified in the April 21, 2014 Exertion Questionnaire that he drove an "automatic, 45 minutes" and that he did his own grocery shopping "one or two times per week"], AR 56-57 [Plaintiff testified at the April 7, 2016 hearing that after May 19, 2013 and into 2014 he was not helping with food shopping; and that he was driving himself to doctors' appointments during the week, but should not have been driving because he was on medication]. Therefore, the degree to which Plaintiff could perform such daily activities may not have been inconsistent with his testimony regarding his symptoms and limitations. See Reddick, supra; see also Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)("If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific

finding as to this fact may be sufficient to discredit a claimant's allegations.").

Fourth, to the extent that the ALJ also found that there was a lack of objective medical evidence supporting Plaintiff's testimony concerning his symptoms and limitations, this factor cannot, by itself, support an adverse finding about Plaintiff's testimony. See Trevizo v. Berryhill, 862 F.3d 987, 1001 (9th Cir. 2017)(once a claimant demonstrates medical evidence of an underlying impairment, "an ALJ 'may not disregard [a claimant's testimony] solely because it is not substantiated affirmatively by objective medical evidence.'"; quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998); see also SSR 16-3p, 2017 WL 5180304, *7 ("We must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record.... However, we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment related-symptoms alleged by the individual.").

Because the Court finds that the the ALJ did not discount Plaintiff's symptom testimony on legally permissible grounds, the Court is unable to defer to the ALJ's credibility determination. Cf. Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1464 (9th Cir. 1995)(the court will defer to the ALJ's credibility determinations when

they are appropriately supported in the record by specific findings justifying that decision)(citations omitted).

**B. Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman v. Apfel, 211 F.3d at 1179-81.

Since the ALJ failed to properly assess Plaintiff's symptom testimony, remand is appropriate. Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects. Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: November 30, 2018

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE